UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GARY E. COX,

  -vs-                                              Plaintiff,

ERIC HURD,

                                                  Defendant

DECISION & ORDER
07-CV-6044

---

## INTRODUCTION

      This action, pursuant to 42 U.S.C. § 1983, in which Plaintiff contended that Defendant violated his civil rights by subjecting him to excessive force when Defendant arrested him on June 1, 2004, was tried before the Court without a jury on January 23, 2009.  The only testimony received at trial was from Plaintiff and Defendant. The Court, having considered the testimony of the witnesses and exhibits received into evidence, now, pursuant to Fed. R. Civ. Proc. 58 (c), makes its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

      Plaintiff, Gary E. Cox  was born on May 9, 1947 and is presently sixty-one years old. For approximately the last seventeen years, he has resided at 8717 County Route Four, Campbell, New York, which is in Steuben County. He was married to his current wife, Linda, in March of 2006. His former wife Eva passed away on May 7, 2004.

Plaintiff is a Viet Nam veteran, who served in the United States Army. He has been disabled since August 1, 1990, on which date he retired from the the Dresser Rand Company where he had been employed as a machinist. He suffers from Post Traumatic Stress Syndrome along with a bad back. He is approximately five feet eight inches to five feet nine inches in height and approximately one hundred sixty to one hundred seventy pounds in weight.

On June 1, 2004, after placing flowers on his wife's grave, he drove to Brownies Mini Mart, which is a convenience store located in Erwin, New York, to purchase a sub. When he arrived at Brownies sometime after 7:00 p.m., the store was busy. After ordering his sub, he used the bathroom, and bought a cup of coffee. Plaintiff then went outside to have a smoke and drink his coffee while he waited for his sub to be prepared. He was wearing casual clothes with a baseball cap indicating that he was a veteran. He was also utilizing a cane to help him walk. It was not raining on June 1st, but rather, it was a nice day.

Defendant, Eric Hurd ("Hurd"), is a New York State Trooper, who currently holds the rank of Investigator. He is five feet eleven and one-half inches in height and weighs approximately one hundred eighty to one hundred eighty-five pounds. On June 1, 2004 he was a road patrol trooper in uniform and assigned a marked patrol vehicle. On that date, while Plaintiff was at Brownies, Defendant pulled his patrol vehicle into the parking lot of the convenience store at approximately 7:30 p.m. to 8:00 p.m. . As Plaintiff was going into the bathroom, he observed Hurd's vehicle pulling into the parking lot.

Some months before, Hurd along with three other New York State Troopers, executed an arrest warrant on Plaintiff at Plaintiff's residence. The warrant pertained to

allegations made by a City of Corning police officer that Plaintiff had threatened him. The arrest occurred without incident. However, when the troopers and Plaintiff arrived at the Erwin Town Court, where Plaintiff was to be arraigned, he began resisting and would not abide by the troopers' directions. In response, Trooper Crouch, who was one of the officers escorting Plaintiff, pushed him against the wall in the court, causing a plastic letter holder to fall from the wall and break.

    After parking his car on June 1, 2004, Hurd walked into Brownies, purchased a soda, and talked to the clerks for a couple of minutes. He then left the building and walked back toward his car. Plaintiff, who was outside, when Hurd went into the store, observed him purchase the soda. Upon leaving the mini mart, Hurd observed Plaintiff, whom he did not recognize at the time, and greeted him. Plaintiff responded by giving Hurd a thumbs down symbol. Hurd asked Plaintiff what was wrong, and Plaintiff responded to Hurd's question by mumbling something that included, "fuck you." At that point, Hurd realized for the first time that he may know Plaintiff, although he did not place from where he knew him. When Plaintiff said "fuck you," Hurd reacted by telling Plaintiff to "get out of here," whereupon Plaintiff took a step back, grabbed his groin, shook it, and said, "suck this." At the time, there were other people in the parking lot, including children who were in a car parked directly in front of where the encounter between Hurd and Plaintiff was occurring.

    After Plaintiff told Hurd to "suck this," Hurd told Plaintiff that he was under arrest. While Hurd did not tell Plaintiff the specific charge for which he was being arrested, Hurd had in his mind a charge of Disorderly Conduct. After telling Plaintiff that he was under arrest, Hurd proceeded to close the distance between himself and Plaintiff, and

grabbed Plaintiff by the arm. Upon grabbing Plaintiff's arm, Hurd told him to place his hands behind his back, but Plaintiff did not comply. Rather, he kept moving out into the parking lot, pulling Hurd with him, despite Hurd's words to the effect, " to stop resisting and put your hands behind your back." Because of Plaintiff's continued refusal to comply, Hurd, to gain control of Plaintiff, put his other hand on Plaintiff and pulled him to the ground as he was trained to do in such a situation. Once Plaintiff was on the ground, Hurd put his right knee on Plaintiff's back to secure him and then placed him in handcuffs. After Hurd handcuffed Plaintiff, he place Plaintiff into his patrol vehicle. The time that elapsed from the point that Heard told Plaintiff that he was under arrest until the point that Hurd placed Plaintiff into his patrol vehicle was about a minute. At no time did Hurd ever punch Plaintiff, kick him, or use his baton against him. The only force Hurd used was the force involved in taking Plaintiff to the ground and handcuffing him. The first time Hurd noticed Plaintiff's cane was when he and Plaintiff were on the ground.

In connection with the incident, Plaintiff was charged with Disorderly Conduct, Resisting Arrest, and Possession of a Weapon for a tire checker that was found in his vehicle. On August 19, 2004, Plaintiff pled to Disorderly Conduct in satisfaction of all charges.

## CONCLUSIONS OF LAW

The Fourth Amendment's prohibition against the use of excessive force in the course of an arrest was established by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). **To comport with the Fourth Amendment when effectuating an arrest, an officer's use of force must be objectively reasonable in light of the facts and circum-**

> **stances confronting him and without regard to his underlying intent or motivation.** Id. at 397. In determining whether the force used during an arrest is reasonable, the court should consider how a reasonable officer facing the same circumstance would have acted in response. Id. at 396. In addition, the court must recognize that "[n]ot every push or shove ... violates the Fourth Amendment." Id. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)) (internal quotation omitted). This objective reasonableness standard is applied using a totality of the circumstances approach that includes an examination of the severity of the crime at issue, the immediate threat the suspect poses to the officer and others, and whether the suspect is resisting arrest or attempting to flee. *Graham*, 490 U .S. at 396; see also *Sullivan*, 225 F.3d 161, 165 (excessive force "subject to an objective test of reasonableness under the totality of the circumstances")

 *Smith v. Fields*,  2002 WL 342620 at *3 (S.D.N.Y. 2002) (emphasis added). Moreover, the following jury instruction offers guidance on how a trier of fact should analyze a claim that excessive force was used in making an arrest:

> Plaintiff claims the defendant police officers used excessive force when they arrested [seized] plaintiff . In making a lawful arrest, a law enforcement officer has the right to use such force as is necessary under the circumstances to effect the arrest. Whether or not the force used in making an arrest was unreasonable is question to be determined by you in light of all of the evidence received in the case.
> You must determine the degree of force that a reasonable and prudent police officer would have applied in effecting the arrest under the circumstances shown from the evidence received in this case. In determining whether the defendant police officers used excessive force, you may consider:
>
> 1. The extent of the injury suffered,
>
> 2. The need for the application of force,
>
> 3. The relationship between the need and the amount of force used,
>
> 4. The threat reasonably perceived by the responsible officials, and
>
> 5. Any efforts made to temper the severity of a forceful response. Injuries which result from, for example, an officer's use of force to overcome resistance to arrest do not involve constitutionally protected interests. An

> officer's use of excessive force does not give constitutional protection against injuries that would have occurred absent the excessive force.
>
> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with hindsight. The nature of reasonableness must allow for the fact that police officers are often forced to make split-second judgments—under circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
> This reasonableness inquiry is an objective one. The question is whether the defendant police officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

3B Fed. Jury Prac. & Instr. § 165.23 (5th ed.)

Here, the Court concludes that Plaintiff has failed to prove by a preponderance of evidence that Hurd subjected him to excessive force in effecting his arrest on June 1, 2004. To the contrary, based upon its findings of fact, the Court concludes that Hurd's use of force in arresting Plaintiff was objectively reasonable in light of the facts and circumstances confronting him. In that regard, even after Plaintiff gave Hurd the thumbs down and said "fuck you" to him, Hurd responded not with any show of force, but merely by telling Plaintiff to "get out of here." It was only when Plaintiff, in response to Hurd's direction, grabbed his genitals and said, "suck this" in front of others, including children, in a public area, that Hurd placed him under arrest. And, it was only when Plaintiff resisted arrest by pulling away from him, that Hurd utilized what the Court finds was minimal and, as indicated above, objectively reasonable force, to take control of the situation.

## CONCLUSION

Accordingly, it is the decision of the Court, that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Dated: March 3, 2009
      Rochester, New York

                        ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge